FILED
Nov 17  2 59 PM '03
U.S DISTRICT COURT
NEW HAVEN, CONN.

# United States District Court
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARCUS H. DIGGS,<br>   *Plaintiff* | NO.: 3:02CV1628 (GLG) |
| V. | |
| TOWN OF MANCHESTER<br>STEVEN WERBNER (Deputy General Manager);<br>THOMAS WEBER (Fire Chief);<br>ROBERT BYCHOLSKI (Assistant Fire Chief)<br>IN THEIR INDIVIDUAL AND OFFICIAL<br>CAPACITY AND<br>LOCAL 1579 IAFF<br>DAVID M. MAYER (President)<br>   *Defendants* | November 14, 2003 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I. STATEMENT OF FACTS**

The Plaintiff in the present action makes a claim for Race Discrimination, Retaliation, Hostile Work Environment Claim, and Claims pursuant to 42 USC §1983, 1985, § 504 of the Rehabilitation Act and intentional and negligent infliction of emotional distress.

1
Cynthia R. Jennings, Esq.
The Barrister Law Group, LLC—211 State Street—2nd Floor
Bridgeport, CT 06604

Plaintiff, Marcus Diggs, is an African American male. Plaintiff began working for the defendant, Town of Manchester on or about February 28, 1983 through his termination on November 17, 2000. Plaintiff was performing his duties satisfactorily as evidenced by his eighteen years of uninterrupted service with the Town of Manchester. During his tenure as a firefighter, the Plaintiff was a member of Local 1579, IAFF. (Plaintiff's Dep. 173).

On or around October 20, 2000, Plaintiff filed a discrimination complaint with the Commission on Human Rights and Opportunities (CHRO), alleging that Defendants had discriminated against him based on his race and color. On or about November 16, 2000, the Plaintiff attended a union meeting at Station #4. The meeting was called to discuss the Plaintiff's CHRO complaint. The meeting was cancelled allegedly because there were too few persons present to constitute a quorum.

On or around November 17, 2000, Assistant Chief Bycholski, terminated the Plaintiff, allegedly for Plaintiff's violation of the Town of Manchester Violence in the Workplace Policy. On or around November 21, 2000, Defendant Bycholski, sent a letter to Plaintiff to purportedly offer him a "last chance" opportunity for reinstatement to his position. This reinstatement was to be subject to stipulations, one of which was to undergo a psychiatric evaluation by Defendant Town's psychiatrist. On November 27, 2000 a letter was sent to Plaintiff stating that the Plaintiff

was not terminated but the conditions outlined in the "last chance" agreement were in effect. (Exhibit #10).

On November 28, 2000, Defendant Bycholski sent a certified letter to Plaintiff rescinding Plaintiff's termination and substituting certain disciplinary actions which included a suspension and other stated conditions. On November 28, 2000, an e-mail was sent to Defendant Steven Werbner from Defendant Bycholski regarding the fact that the Plaintiff had not picked up the certified letter, and the possibility of hiring a state marshal to serve the letter. On November 29, 2000, a letter to Mr. Lewis P. DeMici from Defendant Werbner, Deputy General Manager, Town of Manchester, regarding three attempts to serve the letter, and the fact that he was unable to contact the Plaintiff. On November 29, 2000, an e-mail was sent to Defendant Werbner from Barbara Mozzer stating that the Plaintiff's paycheck for that week was withheld because of the five-day suspension, but she is paying him the $100 EMT stipend.

On or around December 1, 2000 Town of Manchester received Notice of Hearing and Unemployment Compensation claim regarding the Plaintiff. The Town of Manchester, as employer of the Plaintiff, fought against the plaintiff receiving unemployment compensation. The Plaintiff nevertheless was awarded unemployment compensation. (Plaintiff's Dep. 186)

On or around December 4, 2000 a letter was sent to David M. Mayer, President, Local 1579 IAFF from Defendant Bycholski regarding four grievances filed on behalf of Plaintiff. On

or about December 8, 2000 a letter was sent to David Mayer, President of Local 1579 IAFF from Defendant Bycholski in regards to the four grievances in which the Plaintiff had filed for suspension/unpaid leave of absence. All four grievances were denied.

On or about January 3, 2001 and February 14, 2001 respectively the Town of Manchester and the Local 1579 denied Plaintiff's grievances for suspension without just cause.

On or around December 19, 2000, Plaintiff amended his original CHRO complaint to include the charge that he had been retaliated against based on his engaging in protected activity, as close in time to his engaging in protected activity (complaining about racial discrimination), an adverse action was taken against him (termination from his job as firefighter with the Town of Manchester after 18 years of service).

On or around January 25, 2001, Defendant Town of Manchester allegedly terminated Plaintiff because he refused to permit Defendant Town's psychiatrist full access to his mental health records. (Exhibit #11). The Town claims this was for the purpose of obtaining a fitness-for-duty evaluation from the Plaintiff. Yet, the Plaintiff was *never* reinstated in his position following his November 17, 2000 termination. (Plaintff's Dep. 185). Furthermore, terms and conditions stipulated for Plaintiff's reinstatement in his position as firefighter for the Town of Manchester, were never agreed upon, and the "Last Chance" agreement was never executed. It required the signature of the Union and the Plaintiff, and even though the Plaintiff ultimately

signed the "Last Chance" Agreement, under duress, in order to save his job, refusal by the Union to sign it resulted in the Plaintiff never being reinstated in his position. (Exhibit #9).

The Plaintiff suffered from work related stress. Defendants knew of Plaintiff's work related stress syndrome, and were in possession of an Injury Report which they received on or around August 7, 1995, stating that the Plaintiff was suffering from "work related stress disorder." (Plaintiff's Dep. 185). Further, on or around August 17, 1995, Plaintiff was granted medical leave to consult with a psychiatrist. A letter was sent to Chief Rivosa from Sarah Gamble, Ph.D. recommending that Plaintiff be granted this medical leave. On or around August 18, 1995 in a Memo to Chief Rivosa from Defendant Bycholski, expressed concern about Plaintiff's mental well being. On numerous occasions, Plaintiff was required to discuss his disability with his employer in order to obtain the required leaves related to his disability. Plaintiff filed numerous grievances with Union-Local 1579 IAFF. (Exhibit #8). Most of those grievances were never addressed or resolved in the Plaintiff's favor. Grievances from the Plaintiff were almost always denied.

Plaintiff an African-American male, was the only firefighter, Black or White, to be terminated from the Manchester Fire Department in the eighteen years of his employment with the department. (Plaintiff's Dep. 175).

## II.  LEGAL ARGUMENT

In ruling on a motion for Summary Judgment the court may only grant the motion pursuant to Fed.R.Civ.P. 56(c), "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact as to an essential element of the opposing party's claim. <u>Celotex v. Catrett,</u> 477 U.S. 317, 323 (1986). In determining whether the moving party has met its burden, the court must view the evidence in the light most favorable to the nonmoving party. <u>Matsushita Electric Indus. Co. Zenith Radio Corp</u>. 475 U.S. 574 (1986).

To preclude summary judgment, the nonmoving party "is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial." <u>Gaines v. Runyon</u>, 107 F.3d 1171 (6th Cir.1997). The nonmoving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." <u>Anderson v Liberty Lobby, Inc.</u> 477 U.S. 242, 249 (1986). To determine whether the nonmoving party has raised a genuine issue of material fact, the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his favor.

A. The Plaintiff has pled a viable claim pursuant to 42 U.S.C.§ 1985

An individual may seek damages under 42 U.S.C. § 1985 for conspiracy to interfere with that individual's civil rights if two or more persons conspire to deprive the individual of equal protection or equal privileges and immunities under the laws of the United States. The four elements of a § 1985(3) claim are: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States. United Bhd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 828-29, (1983). Furthermore, the conspiracy must also be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id.* at 829.

In this matter, the Plaintiff engaged in a protected activity in that he filed a discrimination complaint with the State of Connecticut Commission on Human Rights and Opportunities (CHRO) on October 20, 2000. Thereafter, Plaintiff was terminated from his position with the Town of Manchester on November 17, 2000. (Exhibit #6). Further, on December 4, 2000 defendant Bycholski sent a letter to Local 1579 IAFF denying all four grievances that were filed

by the Plaintiff. (Plaintiff's Dep. 141) By their conspiracy and acts thereto, the Town of Manchester and Local 1579 together acted to prevent the Plaintiff from exercising his rights to equal protection of the laws through continual denial of grievances, denial of unemployment compensation, and failure to adequately advocate for the Plaintiff.

This is exemplified more specifically in the following instance. On November 17, 2000 Assistant Chief Bycholski terminated the plaintiff citing the Violence in the Workplace Policy. On November 21, 2000 defendant Bycholski sent a "last chance" offer to the Plaintiff in order to reinstate him to his position. Although the plaintiff signed the "last chance" offer, defendant Local 1579 IAFF failed to sign the "last chance" offer resulting in the Plaintiff's termination from the Fire Department. (Exhibit #9). Plaintiff signed the agreement with the understanding from Local 1579 and David Mayer as his representative that the agreement was only a "draft" and that as long as David Mayer or any representative from the Union did not sign the agreement the termination would not stand. (Plaintiff's Dep. 118, 119).

The Union knew that the Plaintiff could not be reinstated to his position if they did not sign the "last chance" agreement. Yet, they failed to sign the agreement that could have saved the Plaintiff's job and 18 year tenure with the Town of Manchester. In addition, the Plaintiff requested that the "last chance" agreement be reviewed by his attorney prior to its signing. This request was denied by Chief Bycholski yet, the Union allowed the Plaintiff to sign it. This was

not protective of Plaintiff's rights. Plaintiff was not notified by writing or verbally about the termination meeting that was to take place on November 17, 2000. Local 1579 did not inform him until 3 pm the same day. (Plaintiff's Dep. 116, 117). The Union knew the agreement was illegal yet still allowed the Plaintiff to sign it. (Exhibit #6). A conspiracy "need not be shown by proof of an explicit agreement but can be established by showing that the 'parties have a tacit understanding to carry out the prohibited conduct.'" LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 427 (2d Cir. 995) (quoting United States v. Rubin, 844 F.2d 979, 984 (2d Cir. 1988)).

Hence, it is clear that Local 1579 and the Town of Manchester worked together. Both the Union and the Town of Manchester had numerous discussions outside the presence of the Plaintiff. (Exhibit #6). The net effect was to deny the Plaintiff of his rights of equal protection. The first two elements of the claim are satisfied.

The Plaintiff consistently made complaints of harassment and racial discrimination. Yet, when he engaged in a protected activity he was terminated. The Plaintiff suffered adverse employment actions from both the Town of Manchester and the Union because of his engaging in a protected activity of filing a discrimination complaint. Therefore, the last two elements of the claim are satisfied. The plaintiff has demonstrated with specificity that there were many instances in which the Town of Manchester and Local 1579 IAFF acted together to the detriment of the Plaintiff. This circuit has held that a plaintiff alleging a conspiracy under § 1985(3) must

allege, with at least some degree of particularity, overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy. Powell v. Workmen's Compensation Board, 327 F.2d 131, 137 (2d Cir. 1964).

On November 27, 2000, Chief Bycholski sent a letter to David Mayer. This letter states "After further consideration, post hearing, it was decided to adjust the stated disciplinary actions to allow for a continuation of FF Diggs Employment. (Exhibit #10). This "post hearing" and "consideration" as held without Plaintiff's knowledge. Again, this exemplifies that the Town of Manchester and Local 1579 were working together to rehire plaintiff only to terminate him without any legal ramifications to the Town of Manchester.

On January 25, 2001, defendant Town of Manchester claims that they again terminated Plaintiff because he refused to permit defendant Town's psychiatrist full access to his mental health records so that a fitness for duty evaluation could be performed. (Exhibit # 11). This also is untrue. The Plaintiff complied with the Town's request by signing a form that was issued by Dr. Selig. It authorized Dr. Selig access to all mental health records. That alone demonstrated Plaintiff's compliance with Bycholski's letter dated November 21, 2000.

Additionally, David Mayer, the Union president had a signed release from the Plaintiff, which provided access to all personnel file records. (Exhibit # 13). Plaintiff's personnel file had medical information from Dr. Thelissa A. Harris and Sarah Gramble, licensed Psychologists

both of which Dr. Selig could have used in his evaluation. (Exhibit #14). Plaintiff continued to comply with the "last chance" Agreement and the request for fitness of duty evaluation by seeing Ms. Dube and a counselor with the EAP program on more than one occasion. Plaintiff also admits to seeing Joanne Cannon as requested by the Town of Manchester. (Plaintiff's Dep. 140, 141).

Plaintiff is a member of a protected class and engaged in a protected activity. Clearly, these facts described have established that the defendant Local 1579 and the Town of Manchester acted together with discriminatory animus. Each of the defendants shared the common objective of the conspiracy against the plaintiff; that was to fail to bring the Plaintiff back to work, to continue to deny the Plaintiff's grievances, continue to deny the Plaintiff unemployment compensation, and working with the Town of Manchester to deny the Plaintiff his constitutional and civil rights.

B.   The Defendants are liable for Intentional Infliction of Emotional Distress

For the Plaintiff to prevail in a case for liability under intentional infliction of emotional distress, four elements must be established. It must be shown: 1) that the actor intended to inflict emotional distress; 2) that the conduct was extreme and outrageous; 3) that the defendant's conduct was the cause of the plaintiff's distress; and 4) that the emotional distress sustained by

the plaintiff was severe. Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society of a nature which is especially calculated to cause and does cause, mental distress of a very serious kind.

In the manner described above the conduct of the Defendants Local 1579 was extreme and outrageous; Defendants had a duty to represent the plaintiff for issues that concern disciplinary employment matters. On several previous occasions, the Union represented the Plaintiff and advocated for him on his behalf. Defendant breached their duty to Plaintiff when they failed to advocate for the plaintiff as discussed above and acted systematically for the common objective of the Town of Manchester. This breach of duty on the part of the Defendants, caused Plaintiff's work-related disability—Work Related Stress Disorder; additionally, Defendants acted with reckless indifference to Plaintiff's civil rights, and in so doing, Defendants caused economic, physical and emotional damages to Plaintiff.

## III.   CONCLUSION

Based on the foregoing discussion and the facts and affidavits accompanying this motion, there remain material issues of facts in dispute. Therefore, the defendant's motion for Summary Judgment must fail.

PLAINTIFF
MARCUS H. DIGGS

BY: *Cynthia R. Jennings*
Cynthia R. Jennings, Esq.,
THE BARRISTER LAW GROUP, LLC
211 State Street, 2nd Floor
Bridgeport, CT 06604
Tel: 203-334-4800
Fax: 203-368-6985
Email: Cynthia.jennings@sbcglobal.net
Federal Bar No. CT21797

## CERTIFICATION

This is to certify that a copy of the foregoing was served via U.S. mail on the 14th day of November, 2003 on the following counsel of record:

James C. Ferguson
Ferguson & Doyle
35 Marshall Road
Rocky Hill, CT 06067-1400

Alexandria L. Voccio
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT 06114

By _____Cynthia R. Jennings_____
Cynthia R. Jennings, Esq.